**STATE of Tennessee, Appellee,**

v.

**Marshall TIDWELL, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

March 21, 1989.

Permission to Appeal Denied by Supreme Court July 3, 1989.

Charles W. Burson, Atty. Gen. & Reporter, Charles E. Bush, Asst. Atty. Gen., Nashville, Joseph D. Baugh, Dist. Atty. Gen., David Rogers, Asst. Dist. Atty. Gen., Franklin, Don Schwendimann, Asst. Dist. Atty. Gen., Howenwall, for appellee.

Jerry A. Colley, Columbia, for appellant.

## OPINION

JONES, Judge.

The Hickman County Grand Jury returned a forty-five (45) count presentment against the defendant, Marshall Tidwell. The presentment accused the defendant of committing multiple offenses of aggravated rape, rape, statutory rape, aggravated sexual battery, sexual battery, and crimes against nature. The defendant was subsequently convicted by a jury of his peers of thirty-four (34) counts of the presentment. The offenses for which the defendant was convicted and the sentences imposed by the trial court are as follows:

(1) Count 1, aggravated rape, alleged to have occurred in October of 1983, a term of forty (40) years in the Department of Correction;

(2) Count 2, rape, alleged to have occurred in the spring of 1984, a term of five (5) years in the Department of Correction, ordered to be served consecutively to the sentence imposed in Count 1;

(3) Count 3, sexual battery, alleged to have occurred in September of 1984, a term of three (3) years in the Department of Correction, ordered to be served concurrently with the sentence imposed in Count 2;

(4) Count 4, sexual battery, alleged to have occurred in August of 1982, a term of three (3) years in the Department of Correction, ordered to be served concurrently with the sentence imposed in Count 2;

(5) Count 8, sexual battery, alleged to have occurred in 1982, a term of three (3) years in the Department of Correction, ordered to be served concurrently with the sentence imposed in Count 2;

(6) Count 9, sexual battery, alleged to have occurred in 1982, a term of not less than two (2) years nor more than five (5) years, in the Department of Correction, ordered to be served concurrently with the sentence imposed in Count 2;

(7) Count 11, sexual battery, alleged to have occurred in November of 1983, a term of three (3) years in the Department of Correction, ordered to be served concurrently with the sentence imposed in Count 2;

(8) Count 12, sexual battery, alleged to have occurred in November of 1983, a term of three (3) years in the Department of Correction, ordered to be served concurrently with the sentence imposed in Count 2;

(9) Count 13, sexual battery, alleged to have occurred in November of 1983, a term of three (3) years in the Department of Correction, ordered to be served concurrently with the sentence imposed in Count 2;

(10) Count 16, sexual battery, alleged to have occurred in 1981, a term of not less than three (3) nor more than five (5) years in the Department of Correction, ordered to be served concurrently with the sentence imposed in Count 2;

(11) Count 18, aggravated sexual battery, alleged to have occurred in December of 1983, a term of twenty (20) years in the Department of Correction, ordered to be served concurrently with the sentence imposed in Count 1;

(12) Count 19, aggravated sexual battery, alleged to have occurred in December 1983, a term of twenty (20) years in the Department of Correction, ordered to be served consecutively with the sentence imposed in Count 18, but concurrently to the sentence imposed in Count 1;

(13) Count 20, aggravated sexual battery, alleged to have occurred in the fall of 1979, a term of not less than five (5) years nor more than thirty-five (35) years in the Department of Correction, ordered to be served concurrently to the sentence imposed in Count 1;

(14) Count 21, aggravated sexual battery, alleged to have occurred in the fall of

1979, a term of not less than five (5) years nor more than thirty-five (35) years in the Department of Correction, ordered to be served concurrently to the sentence imposed in Count 1;

(15) Count 22, aggravated sexual battery, alleged to have occurred in 1982, a term of not less than five (5) years nor more than thirty-five (35) years in the Department of Correction, ordered to be served concurrently to the sentence imposed in Count 1;

(16) Count 23, aggravated sexual battery, alleged to have occurred in 1982, a term of twenty (20) years in the Department of Correction, ordered to be served consecutively to the sentence imposed in Count 18, but concurrently to the sentence imposed in Count 1;

(17) Count 24, statutory rape, alleged to have occurred on August 15, 1986, a term of three (3) years in the Department of Correction, ordered to be served concurrently with the sentences imposed in Count 2;

(18) Count 26, statutory rape, alleged to have occurred in January of 1984, a term of three (3) years in the Department of Correction, ordered to be served concurrently with the sentence imposed in Count 2;

(19) Count 27, statutory rape, alleged to have occurred in September of 1984, a term of three (3) years in the Department of Correction, ordered to be served concurrently with the sentence imposed in Count 2;

(20) Count 28, statutory rape, alleged to have occurred in 1982, a term of three (3) years in the Department of Correction, ordered to be served concurrently with the sentence imposed in Count 2;

(21) Count 29, statutory rape, alleged to have occurred in 1982, a term of three (3) years in the Department of Correction, ordered to be served concurrently with the sentence imposed in Count 2;

(22) Count 30, statutory rape, alleged to have occurred in 1982, a term of three (3) years in the Department of Correction, ordered to be served concurrently with the sentence imposed in Count 2;

(23) Count 33, crime against nature, alleged to have occurred in October of 1983, a term of ten (10) years in the Department of Correction, ordered to be served concurrently to the sentence imposed in Count 1;

(24) Count 34, crime against nature, alleged to have occurred in the spring of 1984, a term of ten (10) years in the Department of Correction, ordered to be served concurrently to the sentence imposed in Count 1;

(25) Count 35, crime against nature, alleged to have occurred in 1984, a term of ten (10) years in the Department of Correction, ordered to be served concurrently to the sentence imposed in Count 1;

(26) Count 36, crime against nature, alleged to have occurred in 1984, a term of ten (10) years in the Department of Correction, ordered to be served concurrently to the sentence imposed in Count 1;

(27) Count 37, crime against nature, alleged to have occurred in 1984, a term of ten (10) years in the Department of Correction, ordered to be served concurrently to the sentence imposed in Count 1;

(28) Count 39, crime against nature, alleged to have occurred in 1982, a term of ten (10) years in the Department of Correction, ordered to be served concurrently to the sentence imposed in Count 1;

(29) Count 40, crime against nature, alleged to have occurred in 1982, a term of ten (10) years in the Department of Correction, ordered to be served concurrently to the sentence imposed in Count 1;

(30) Count 41, crime against nature, alleged to have occurred in July of 1985, a term of ten (10) years in the Department of Correction, ordered to be served concurrently to the sentence imposed in Count 1;

(31) Count 42, crime against nature, alleged to have occurred in July of 1986, a term of ten (10) years in the Department of Correction, ordered to be served concurrently to the sentence imposed in Count 1;

(31) Count 42, crime against nature, alleged to have occurred in July of 1986, a term of ten (10) years in the Department of

Correction, ordered to be served concurrently to the sentence imposed in Count 1;

(32) Count 43, crime against nature, alleged to have occurred in January of 1984, a term of ten (10) years in the Department of Correction, ordered to be served concurrently to the sentence imposed in Count 1;

(33) Count 44, crime against nature, alleged to have occurred in January of 1984, a term of ten (10) years in the Department of Correction, ordered to be served concurrently to the sentence imposed in Count 1;

(34) Count 45, crime against nature, alleged to have occurred in September of 1984, a term of ten (10) years in the Department of Correction, ordered to be served concurrently to the sentence imposed in Count 1.

After the trial court denied his motion for a new trial, the defendant appealed as of right to this Court pursuant to Rule 3(b), Tenn.R.App.P.

## ISSUES PRESENTED FOR REVIEW

The defendant presents three (3) issues for our review. He contends that (a) the trial court committed error of prejudicial dimensions in denying the defendant's motion to suppress the statement he gave law enforcement officers in Dickson County, (b) the amendment to the presentment was insufficient, as a matter of law, to toll the statute of limitations as to several counts of the presentment, and (c) the trial court committed error of prejudicial dimensions in refusing to charge the jury on the law governing the testimony of an accomplice.

## ADMISSIBILITY OF DEFENDANT'S CONFESSION

On August 16, 1986, the defendant was arrested in Dickson County for having unlawful sexual contact with a minor in that county. The defendant admitted he committed this offense shortly after his arrest. Later, the defendant was questioned at the Dickson Police Department by Allen Ted Tarpley, an investigator with the District Attorney General's Office, and Buddy Tidwell, a detective employed by the Dickson Police Department. The interrogation was videotaped; and Tarpley made an audio tape recording of the interrogation.

When the interrogation commenced, the defendant was advised of his *Miranda* rights. The defendant again admitted that he had engaged in unlawful sexual contact with a minor in Dickson County. The questioning then focused on whether the defendant had engaged in like or similar conduct with minors in Hickman County, where the defendant and his family resided. The defendant told the officers that he had engaged in similar conduct "a time or two" in Hickman County. However, the defendant refused to discuss the nature of the acts or give the names of the victims. In an effort to coax the defendant into telling them about the incidents in Hickman County, the officers referred to the "very bad physiological [sic] effect" the conduct had upon the victims and the "need to get counselling for these kids." They told the defendant "Human Services is on the way to your house right now to pick up your two children to talk to them." The officers were relentless in their effort to obtain this information from the defendant.

The defendant expressed a desire to call his brother-in-law. The officers, obviously wanting to keep the defendant sequestered from others, told the defendant he could call him in "a few minutes." A few minutes never arrived. Later, the following colloquy took place between the officers and the defendant:

Ted: Well, I'm going to tell you Marshall, before we call Larry you need to tell us about ..about the school. I'll let you call him or I'll let you call your wife. They can come over here and meet with you if you like. That's fine with me.

MT: *I'd like to call a lawyer before I discuss that.*

Ted: Ok. That's fine.

MT: I know I need to tell you about it, but I think I need some ..

Ted: You need to know you need to do what's best for you, but I'm going to tell you. I'm going to get on your case. You know, I'm not going to threaten you, but *you need to tell me*

*about that over there and if you want a lawyer, that stops right now. Everything I do ..we're through.*

MT: *I can't get a lawyer and tell you to?*

Ted: *No. I'm not going to listen to you. After today it's all over with as far as I am concerned. You know.*

Buddy: We'll just have to go on with our investigation the way we know best, Marshall.

Ted: That's right. If you want a lawyer, I've got to stop talking to you at this time. Unless you want to waive those rights again, you know. That's

MT: What would you have to do that?

Ted: That's just the law, I have to do that. I can not talk to you when, you know, if you want a lawyer, we have to break off all conversation at that time and uh that's it. That's what you want, that's exactly what we'll do.

Buddy: We can do that.

Ted: *But I'm going to tell you, you know, we ain't going to give up.*

MT: I realize that. I'm going to tell you, but I ... *don't I need some guidance in what I'm going to say* and..

Ted: *I don't know if you do or not.*

Buddy: That's a personal decision, that you are going to have to make, Marshall, but what you need to understand is we're bound by law to find out who these other children were. We will have to continue our investigation until we do.

MT: What I'm saying is ..is it going·to make any difference what I tell you and how I tell you as far as ..how it's going to affect me?

Ted: *You need to tell us now.* No it's not going to be any different, you know. I'm sure if you tell us that you had sexual relations in the school over there with ..with fifteen children. That would affect you some. There's no question you going to be prosecuted, I'm sure. But I, you know, from what you've already told me today. I already know what has been going on over there from some of the things we've already done in this inves-

tigation. We know, you know, what's been going on.

Buddy: What's it's going to amount to Marshall, is we are going to have to pull every child's (sic) that was in that school and interview them one by one. It may take us two, it may take us three months months (sic). Whatever it takes, we are going to have to do it and uh we will do it.

Ted: You don't want us to do that.

Ted: Is that good..(inaudible)

Buddy: And when we pull these children and talk to them Marshall, we're going to have .. their parents are going to have to be there. They are going to have to know why we are asking these questions.

Ted: *What we are trying to get you to do is to save us a lot of time.* You know, cause here's the situation. We go talk to all these children you know. *There's your family going to be right in the middle of it over there.* Them people driving up and down the road every day seeing you and your wife, seeing her teaching school. The only thing it's going to do is make matters worse. If you want a lawyer, that's fine. I don't want to talk to you no more. You've got to make that decision. I, you know, like I said..

MT: Let me tell you the truth with or without a lawyer. *The point is it going to matter in the end for me.*

Buddy: It's going to make a difference. But here's here's (sic) the thing. If we have to go with a lengthy investigation to find out, its going (sic) be..

MT: *Can't I have a lawyer here today and tell you..*

Buddy: *Oh yeah, you can have a lawyer any time you want to but our conversation is through..*

Ted: *We through. We're not going to talk to you anymore. Cause a lawyer when he comes in here he's going to tell you not to say one word.*

Buddy: That's exactly what he is going to say and we're going to have to find out anyway. It's going to take us two

or three months, but I promise you Marshall, we won't stop until we do.

Ted: That's right. And the only thing it does *when somebody brings a lawyer in and they say that, then they've wasted my time and wasted their time when I could be home with my family* and there's no lawyer going to let you sit here and tell us, you know. You've got to do what's best for you. And, you know..

Buddy: You have to know that the lawyer that represents you legally that *the lawyer won't give a tinker's damn about these other children,* is exactly what happens. We're not.. we're concerned about your welfare, but to be perfectly honest with you we're more concerned about these other children. I think you can understand that.

Ted: But I can't talk to you anymore until you decide do you want to talk to us again. That's what you're going to do, that's fine, uh we're going to uh year,. I've shot straight with you and I don't lie to people. I didn't lie to you. But you need to decide Marshall.

MT: If I tell you that there's been some, is there still going to be a big deal made of it? Will it be put in the paper?

Buddy: We're going to try to keep it ..

Ted: Hey, I don't put anything in the paper involving children, sexual abuse cases. Uh because one thing it's hard on the children, uh I don't, you know, I'm going to be honest with you I don't really worry about the defendant what it does to him, but you know, the children have a lot of peer pressure in school and uh it's to me it's just not the best thing to do for a child.

Buddy: No, it's not really in the interest of the children to publish that and that's why we try to maintain confidentiality and we insist on doing that. But if we have to go public to get these people to counseling and aid that they deserve I've got no qualms about doing that, if that's the way we've got to do it, we just have to do it.

Ted: I don't either. Today, we'll probably be working all night tonight, you know. What do you want to do, Marshall?

MT: Well let me tell you. I've always wanted to tell somebody.

(Emphasis added). Although the defendant succumbed to the officers' request, he remained reluctant to give details about the incidents. However, the officers were ultimately successful in convincing the defendant to reveal the names of approximately six (6) victims and the nature of the sexual contact with the children. After the interrogation was completed the officers asked the defendant to contact them if he was able to remember the names of any other victims.

Approximately fifteen to twenty minutes after the interrogation was concluded, the defendant, confined to a cell, stated he wanted to talk to the officers. He was immediately taken to the interview room and the ensuing interrogation was again videotaped. He gave the officers the names of approximately three (3) additional victims and discussed the nature of his sexual contact with the children.

The defendant filed a motion to suppress the confession he gave to Tarpley and Tidwell. The motion alleges in part that "the defendant had requested an attorney during said interrogation and had asked for the advice of an attorney, but, nevertheless, the investigator continued to question the defendant and ultimately persuaded the defendant to disclose the information upon which all counts of the indictment are based." The defendant also filed a motion to dismiss the presentment. In the motion the defendant contended that the defendant's illegal confession was the sole source and only means of procuring the information used to return the presentment, and the prosecution against the defendant should be dismissed.

An evidentiary hearing was conducted prior to trial. At the conclusion of the hearing the trial court denied the motion to suppress. In ruling the trial court said:

... I find, though, that we have a waiver of the right to counsel. I feel like that

every case has got to be dealt with on its own details, and in this case, Mr. Tidwell is of above average intelligence. He knew that he had the right to an attorney. The Dickson officers were very specific. They informed him repeatedly that he had a right to an attorney, and every time that the subject was discussed, they told him that they would not talk to him any further if he wanted an attorney. So it was clear. And his statements in response to that, I interpret as being his consideration of the matter, whether or not he should take those steps. It seems like to me in listening to the evidence, he was doing a great deal of soul searching at that point in trying to make a decision as to what he should do, and he wanted to make a statement. I think that was clear. And he said not only that he wanted to then, but he had wanted to tell about this for years and years.

And any doubt, I think, was removed by his subsequent calling on the officers in Dickson to give them further information. I think that just reinforces the decision that he made to waive any right to an attorney. So I'm satisfied on that score. And I, on that basis, I'll overrule the motion.

Tarpley was called as a witness during the trial on the merits. He was permitted to testify about the confession given by the defendant. His testimony included the names of the victims and the nature of the sexual contact between the victims and the defendant.

█ In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court declared that an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation. *See Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378, 384 (1981). The Court further held that when an accused invokes his right to have counsel present, all "interrogation must cease until an attorney is present" to confer with the accused and advise the accused of his rights. *Edwards v. Arizona*, 451 U.S. at

482, 101 S.Ct. at 1883, 68 L.Ed.2d at 384. *See Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988); *Solem v. Stumes*, 465 U.S. 638, 646, 104 S.Ct. 1338, 1343, 79 L.Ed.2d 579, 589 (1984); *Edwards v. Arizona*, supra; *State v. Nakdimen*, 735 S.W.2d 799, 803 (Tenn.Crim.App. 1987); *State v. Goforth*, 678 S.W.2d 477, 479 (Tenn.Crim.App.1984). This rule applies with equal force to instances where law enforcement officers desire to question an accused regarding an offense which is unrelated to the subject matter of the initial interrogation. *Arizona v. Roberson*, supra. If a law enforcement officer persists in questioning the accused after the accused has invoked his right to counsel, any statement given by the accused may not be admitted into evidence if the defendant moves to suppress the statement. *See Arizona v. Roberson*, supra; *Edwards v. Arizona*, supra; *Davis v. Puckett*, 857 F.2d 1035 (5th Cir.1988); *State v. Goforth*, supra.

█ Once an accused has invoked his right to counsel, he may nevertheless waive this right if (a) he initiates further communications, exchanges or converses with law enforcement officers and (b) the waiver is knowingly and intelligently made. *Smith v. Illinois*, 469 U.S. 91, 95, 105 S.Ct. 490, 492, 83 L.Ed.2d 488, 493–494 (1984); *Oregon v. Bradshaw*, 462 U.S. 1039, 1044, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405, 411– 412 (1983); *Davis v. Puckett*, 857 F.2d at 1037; *State v. Claybrook*, 736 S.W.2d 95, 102–103 (Tenn.1987). When the prosecution contends that the accused has waived the right to counsel after invoking this right, the prosecution has a heavy burden of demonstrating by clear and convincing evidence that the accused initiated the subsequent discussion and that he freely, voluntarily and knowingly waived this right. *Oregon v. Bradshaw*, supra; *Edwards v. Arizona*, supra; *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Lee v. State*, 560 S.W.2d 82 (Tenn. Crim.App.1977). A valid waiver "cannot be established by showing only that he responded to further police initiated custodial interrogation even if he has been advised

of his rights." *Edwards v. Arizona,* 451 U.S. at 484, 101 S.Ct. at 1884, 68 L.Ed.2d at 386. *See Michigan v. Jackson,* 475 U.S. 625, 636, 106 S.Ct. 1404, 1410–1411, 89 L.Ed.2d 631, 642 (1986); *Smith v. Illinois,* 469 U.S. at 98, 105 S.Ct. at 494, 83 L.Ed.2d at 496. Furthermore, the use of an accused's subsequent responses to cast doubt on the presence or adequacy of an initial request for counsel is not permitted. *Smith v. Illinois,* supra. As the United States Supreme Court said in *Smith v. Illinois:*

> "No authority, and no logic, permits the interrogator to proceed ... on his own terms and as if the defendant had requested nothing, in the hope that the defendant might be induced to say something casting retrospective doubt on his initial statement that he wished to speak through an attorney or not at all."

469 U.S. at 99, 105 S.Ct. at 494, 83 L.Ed.2d at 496.

■ In the case *sub judice* the defendant's statement to the officers that "I'd like to call a lawyer before I discuss that" was sufficient to invoke his right to have counsel present during the interrogation concerning the offenses which may have occurred in Hickman County. *See Bailey v. Hamby,* 744 F.2d 24, 26 (6th Cir.1984); *Maglio v. Jago,* 580 F.2d 202, 206 (6th Cir.1978). The request was unequivocal. Moreover, this request is supported by the questions the defendant propounded to the officers. At one point the defendant asked: "I can't get a lawyer and tell you too?" At another point the defendant asked: "Can't I have a lawyer here today and tell you?" The defendant also told the officers: "I need some guidance in what I am going to say." We are of the opinion all dialogue between the officers and the defendant regarding any offense that may have occurred in Hickman County should have been terminated until the defendant was able to confer with the attorney of his choice, and, if desired, have counsel present during any subsequent interrogation regarding the defendant's activity in Hickman County.

As can be seen from the colloquy set forth hereinabove, the officers did not stop their interrogation of the defendant following his request for an attorney. Instead, the officers made every effort to coax the defendant into making a statement concerning any unlawful sexual contact the defendant may have had with any children in Hickman County. After the defendant had invoked his right to have counsel present, Tarpley told the defendant "you need to tell me about that over there [Hickman County]." He also told the defendant that if he obtained an attorney to represent him, "I'm not going to listen to you. After today it's all over with as far as I am concerned." When the defendant told Tarpley he needed guidance in what he was going to say, Tarpley told the defendant: "I don't know if you do or not." At another point Tarpley told the defendant: "You need to tell us now." Later, Tarpley told the defendant that their conversation would terminate if he obtained the services of an attorney because an attorney would advise the defendant to remain silent; and a "lawyer won't give a tinker's damn about these children." In summary, the actions of the officers violated the mandate of the United States Supreme Court that all questioning must cease when an accused makes an unequivocal request to confer with an attorney or have an attorney present during interrogation. *Arizona v. Roberson,* supra; *Solem v. Stumes,* supra; *Edwards v. Arizona,* supra; *Miranda v. Arizona,* supra; *State v. Nakdimen,* supra; *State v. Goforth,* supra. Therefore, the trial court should have suppressed the statement given by the defendant and prohibited this statement from being introduced into evidence at the trial.

Assuming *arguendo* that the defendant's request in the case *sub judice* was equivocal, the interrogation following the equivocal request should have been strictly limited to a clarification of whether the defendant was in fact invoking his right to have counsel present during interrogation. *Owen v. State of Alabama,* 849 F.2d 536, 539 (11th Cir.1988). Any statement taken by the prosecution following an equivocal request for counsel, but before the request

is clarified as an effective waiver of counsel, violates *Miranda.* *Thompson v. Wainwright,* 601 F.2d 768, 771–772 (5th Cir.1979).

The defendant's request to speak to the officers within ten minutes after the interrogation had concluded did not constitute a waiver of the defendant's right to counsel. The record reflects that the officers requested the defendant to contact them if he remembered the names of any additional victims in Hickman County. Thus, the contact made by the defendant was at the request of the officer; and the ensuing interrogation was simply an extension of the initial interrogation. In other words, the defendant's contact with the officers was not a communication, exchange or conversation within the meaning of *Edwards v. Arizona* and *Oregon v. Bradshaw.*

■ The defendant's contention that the trial court should have suppressed the testimony of the witnesses as fruit of the poisonous tree is without merit. The defendant's argument confuses the scope of the exclusionary rule in Fourth Amendment cases with the exclusionary rule in Fifth Amendment cases. The Fifth Amendment exclusionary rule is limited in scope to the exclusion of confessions obtained in violation of an accused's constitutional rights. *See* C. WHITEBREAD & C. SLOBOGIN, CRIMINAL PROCEDURE § 16.06 (2nd ed. 1986); W. LAFAVE & J. ISRAEL, CRIMINAL PROCEDURE § 9.5 (1985). Evidence derived from an illegally obtained confession is admissible notwithstanding the confession was, or should have been, suppressed. *Collins v. State,* 169 Tenn. 393, 88 S.W.2d 452 (1935); *State v. Story,* 608 S.W.2d 599 (Tenn.Crim.App. 1980). *See Michigan v. Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). There is one exception to this rule. If the confession from which the evidence was derived was coerced in the due process sense, the evidence is not admissible. *See Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985); *Michigan v. Tucker,* supra. This exception is not applicable in the case *sub judice.*

In view of our Supreme Court's holding in *Collins v. State,* supra, and this Court's holding in *State v. Story,* supra, the defendant was not entitled to have the testimony of the witnesses suppressed. *See Michigan v. Tucker,* supra.

## THE STATUTE OF LIMITATIONS

The defendant filed a pretrial motion to dismiss certain counts of the presentment on the ground the offenses charged in these counts were barred by the statute of limitations. The assistant district attorney general filed a response which alleged the statute of limitations had been tolled as to each offense due to the defendant's concealment of the respective offenses. The trial court subsequently permitted the assistant district attorney general to amend all forty-five (45) counts of the presentment in the following particulars:

> Said crime having been concealed by the aforesaid defendant, MARSHALL TIDWELL, from date of the commission of the offense until August 16, 1986.

The defendant contends that the amendment was insufficient, as a matter of law, to toll the statute of limitations. In the alternative, the defendant contends that the State failed to prove that the defendant concealed the offenses.

The offense of sexual battery, charged in counts 3, 4, 8, 9, 11, 12, 13 and 16, and the offense of statutory rape, charged in counts 24, 26, 27, 28, 29, and 30, are punishable by a prison sentence of not more than five (5) years. *See* T.C.A. §§ 39–2–605(b) and 39–2–607(b) (Supp.1988). The prosecution of these offenses was required to be commenced "within two (2) years next after the commission" of the respective offenses. T.C.A. § 40–2–101(b) (Supp.1988). The offense of aggravated sexual battery, charged in counts 18, 19, 20, 21, 22, and 23, and the offense of crime against nature, charged in counts 34, 35, 36, 37, 39, 40, 41, 42, 43, 44, and 45, are punishable by a prison sentence of not less than five (5) years nor more than fifteen (15) years. T.C.A. §§ 39–2–606(b) and 39–2–612 (Supp. 1988). The prosecution for these offenses were required to be commenced "within

four (4) years next after the commission" of the respective offenses. T.C.A. § 40–2–101(d) (Supp.1988). The same is true with regard to the offense of rape, which is punishable by a prison sentence of not less than five (5) years nor more than twenty (20) years. T.C.A. § 39–2–604(b) (Supp.1988). Since the maximum punishment for the offense of aggravated rape is life imprisonment, the prosecution for this offense could be commenced at any time after the offense was committed. T.C.A. § 40–2–101(a) (Supp.1988).

In 1985 the statute governing the time constraints on the prosecution of felony offenses was amended. The amendment carved out special time constraints for the offenses of aggravated rape, rape, aggravated sexual battery, sexual battery, assault with intent to commit or attempt to commit rape, crimes against nature, incest, begetting child on wife's sister, and the use of minors for obscene purposes when the victim is a minor. T.C.A. § 40–2–101(a) (Supp.1988). A prosecution for any of these offenses must be "commenced no later than the date the child attains the age of majority or within four (4) years next after the commission of the offense, whichever occurs later." T.C.A. § 40–2–101(c) (Supp.1988). However, if the offense is punishable by life imprisonment, like aggravated rape, the offense may be prosecuted at any time after the offense shall have been committed. T.C.A. § 40–2–101(a). This statute would only be applicable to the offenses charged in Count 24, statutory rape, which is alleged to have occurred on August 15, 1986, and Count 41, crime against nature, which is alleged to have occurred in July of 1985. The offenses charged in the remaining counts of the presentment occurred before the enactment of the statute; and the date for the prosecution of these offense would not be affected. *See State v. Creekpaum*, 732 P.2d 557 (Alaska App.1987); *State v. Traczyk*, 421 N.W.2d 299 (Minn.1988); *State v. Shamp*, 422 N.W.2d 736 (Minn.App.1988).

When an indictment or presentment is brought after the expiration of the statute of limitations, it must be pleaded and proved that certain specific facts tolled the statute of limitations. *State v. Comstock*, 205 Tenn. 389, 393, 326 S.W.2d 669, 671 (1959); *State v. Shaw*, 113 Tenn. 536, 538, 82 S.W. 480 (1904); *State v. Hix*, 696 S.W.2d 22, 25 (Tenn.Crim.App.1984); *State v. Thorpe*, 614 S.W.2d 60, 65 (Tenn.Crim. App.1980); *State v. House*, 2 Shannon's Cases 610, 611 (1877). If the charging instrument does not allege sufficient facts to toll the statute of limitations, or the State fails to prove sufficient facts to toll the statute of limitations at trial, the accused cannot be convicted of the offense. Consequently, an indictment or presentment which fails to allege sufficient facts to toll the statute of limitations must be dismissed, *State v. Comstock*, supra; *State v. Shaw*, supra; *State v. Thorpe*, supra; *State v. House*, supra; and when the charging instrument alleges sufficient facts to toll the statute of limitations, but the State fails to prove these facts during trial, the trial court must dismiss the prosecution with prejudice. *See State v. Hix*, supra; *State v. Thorpe*, supra.

In the case *sub judice* the presentment, as amended, alleged sufficient facts which, if proven, would toll the statute of limitations. T.C.A. § 40–2–103 provides that "[n]o period, during which the party charged conceals the fact of the crime ... is included in the period of limitation." However, the State failed to establish during the trial that the defendant concealed the offenses. *State v. Bentley*, 239 Kan. 334, 721 P.2d 227 (1986). *See Sears v. State*, 356 S.E.2d 72 (Ga.App.1987).

The victims were aware of the acts which constitute the offenses of which the defendant stands convicted. While the defendant asked the victims not to tell anyone about the sexual contact, the victims had ample opportunity to tell their parents, siblings, relatives, and friends about the acts which constituted the offenses. One victim apparently told his fellow students about what had occurred, and the information traveled rapidly throughout the school. The defendant talked to a group of victims together on one occasion. He also told some of the victims about his sexual contact with other victims. However, no one alerted the authorities. It is clear the victims were aware of the acts which consti-

tuted the offenses of which the defendant stands convicted. However, the defendant never threatened any of the victims.

In *State v. Bentley*, supra, an uncle had sexual contact with his nine-year-old niece. When the child's father arrived home, the uncle threatened the child in a mean voice. He told the child "not to tell anybody, and if she did, he would try to do it again." He also told the child that if she told her father, "he would tell her father that her brother had come into the bathroom while she was in there," a violation of the father's privacy rule. The Kansas Supreme Court held that the statements of the uncle did not constitute concealment of the offense. *Bentley*, 721 P.2d at 230. In *Sears v. State*, supra, the Georgia Court of Appeals ruled that a victim's infancy, lack of awareness of the criminal nature of the accused's conduct, and/or the victim's fear of the accused does not toll the statute of limitations in a child abuse case. *Sears*, 356 S.E.2d at 74.

### REFUSAL TO CHARGE LAW REGARDING THE TESTIMONY OF AN ACCOMPLICE

In view of our holdings regarding the admissibility of the defendant's confession and the statute of limitations, it is not necessary for us to address this issue in view of the fact several counts of the presentment must be tried again.

### CONCLUSION

We conclude that the defendant's convictions in Counts 3, 4, 8, 9, 11, 12, 13, 16, 20, 21, 22, 23, 26, 27, 28, 29, 30, 39, and 40, must be reversed and dismissed as these offenses were barred by the statute of limitations. The defendant's convictions in Counts 1, 2, 18, 19, 24, 33, 34, 35, 36, 37, 41, 42, 43, 44, and 45 are reversed and remanded for a new trial.

REID, J., and ALLEN R. CORNELIUS, Jr., Special Judge.