IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

SEPTEMBER 1995 SESSION



FILED

November 15, 1995

Cecil Crowson, Jr.
Appellate Court Clerk

PHILLIP REX SPIGHT,          )
                             )
        APPELLANT,           )
                             )        No. 02-C-01-9502-CR-00034
                             )
                             )        Shelby County
v.                           )
                             )        Wil V. Doran, Special Judge
                             )
                             )        (Post-Conviction Relief)
STATE OF TENNESSEE,          )
                             )
        APPELLEE.            )


FOR THE APPELLANT:

Arthur E. Quinn
Attorney at Law
860 Ridge Lake Blvd., Suite 360
Memphis, TN 38120

FOR THE APPELLEE:

Charles W. Burson
Attorney General & Reporter
450 James Robertson Parkway
Nashville, TN 37243-0493

Sharon S. Selby
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

John W. Pierotti
District Attorney General
201 Poplar Avenue, Third Floor
Memphis, TN 38103

Karen Cook
Assistant District Attorney General
201 Poplar Avenue, Third Floor
Memphis, TN 38103


OPINION FILED:_____


AFFIRMED


Joe B. Jones, Judge

**O P I N I O N**

The appellant, Phillip "Rex" Spight, appeals as of right from a judgment of the trial court denying his suit for post-conviction relief. The trial court found that (a) the appellant received the constitutionally mandated assistance of counsel prior to trial, during trial, and in the appellate courts and (b) the Supreme Court's decision in State v. Brown, 836 S.W.2d 530 (Tenn. 1992), is not to be applied retroactively.

Two issues are presented for review. The appellant poses the issues in the following manner:

> I. Whether the evidence preponderates against the trial court's finding that the petitioner was rendered effective assistance of counsel as set forth in the case of Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975).
>
> II. With regard to the issues raised by the case of State v. Brown, 836 S.W.2d 530 (Tenn. 1992), whether there was sufficient evidence upon which to sustain a conviction for first degree murder and whether trial counsel was ineffective for failure to properly raise issues supported by the Brown case.

The judgment of the trial court is affirmed.

The appellant was tried for and convicted of murder in the first degree. The state sought the imposition of a death sentence. The jury sentenced the appellant to life in the Department of Correction. He subsequently appealed as of right to this Court. His conviction was affirmed. State v. Phillip Spight, Shelby County No. 71 (Tenn. Crim. App., Jackson, July 31, 1991). The Supreme Court denied the appellant's application for permission to appeal on December 2, 1991.

The present suit was filed in the trial court on November 22, 1993. The appellant amended his pleadings on January 10, 1994. The state filed a response. The trial court conducted an evidentiary hearing on June 2, 1994. The trial court filed extensive findings of fact and conclusions of law on September 1, 1994, with the order denying the relief sought.

1

## I.

When a petitioner in a suit for post-conviction relief is granted an evidentiary hearing to ventilate the grounds raised in his petition, the trial court's findings of fact are afforded the weight of a jury verdict. Consequently, this Court is bound by the facts found by the trial court unless the evidence contained in the record preponderates against the judgment entered in the cause.[1]

Where, as here, the petitioner seeks to vitiate a conviction on the ground that trial counsel were ineffective in their representation, the petitioner must establish by a preponderance of the evidence (a) the services rendered or advice given by counsel fell below "the range of competence demanded of attorneys in criminal cases,"[2] and (b) the unprofessional conduct or errors of counsel "actually had an adverse effect on the defense."[3] In determining whether an accused has been denied his constitutional right to the effective assistance of counsel, an appellate court is bound by certain well-established standards. First, the standard created by the Tennessee Supreme Court in Baxter v. Rose[4] does not require perfect representation.[5] Second, it is not this Court's function to "second guess" trial counsel's tactical and strategic choices pertaining to matters of defense unless these choices are made without knowledge of the relevant facts or the law applicable to the issue.[6] As the Supreme Court said in Hellard v. State: "[T]he defense

---

[1]Teague v. State, 772 S.W.2d 932, 933-34 (Tenn. Crim. App. 1988), cert. denied 493 U.S. 874, 110 S.Ct. 210, 107 L.Ed.2d 163 (1989); Brooks v. State, 756 S.W.2d 288, 289-90 (Tenn. Crim. App.), per. app. denied (Tenn. 1988); Vermilye v. State, 754 S.W.2d 82, 84 (Tenn. Crim. App.), per. app. denied (Tenn. 1987).

[2]Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).

[3]Strickland v. Washington, 466 U.S. 668, 693, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674, 697 (1984). The Strickland standards were adopted by the Tennessee Supreme Court in State v. Melson, 772 S.W.2d 417, 419 (Tenn. 1989), cert. denied, 493 U.S. 874, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989). Prior to Melson, this Court adopted the Strickland standards in numerous cases. See Best v. State, 708 S.W.2d 421, 422 (Tenn. Crim. App. 1985), per. app. denied (Tenn. 1986), one of the first cases to apply Strickland.

[4]523 S.W.2d 930 (Tenn. 1975).

[5]Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

[6]Hellard, 629 S.W.2d at 9; State v. Swanson, 680 S.W.2d 487, 490 (Tenn. Crim. App.), per. app. denied (Tenn. 1984); McBee v. State, 655 S.W.2d 191, 193 (Tenn. Crim. App.), per. app. denied (Tenn. 1983).

attorney's representation, when questioned, is not to be measured by '20-20' hindsight."[7]

Third, an accused is not deprived of the effective assistance of counsel because a different

procedure or strategy might have produced a different result.[8]

Since the trial court found that the appellant failed to establish he was entitled to

post-conviction relief, this Court must review the record to determine if the trial court's

findings of fact preponderate against the judgment entered in this case.[9]  In doing so, this

Court is bound by certain well-established rules of appellate procedure.  As this Court said

in Black v. State:[10]

> First, this Court cannot reweigh or reevaluate the evidence;
> nor can [this Court] substitute [its] inferences for those drawn
> by the trial [court].  Second, questions concerning the
> credibility of the witnesses, the weight and value to be given
> their testimony, and the factual issues raised by the evidence
> are resolved by the trial [court], not this Court.  Third, the
> appellant has the burden in this Court of illustrating why the
> evidence contained in the record preponderates against the
> judgment entered by the trial [court].

With these rules in mind, this Court will proceed to determine the merits of the issues

presented for review.

II.

The appellant gave a complete statement to the police.  He subsequently made two

spontaneous statements to the officers.  A lawyer retained by the family obtained

information from the appellant and gave the information to the police officers investigating

the homicide.  The appellant contends that he was denied his constitutional right to the

effective assistance of counsel because trial counsel failed to file and pursue a motion to

suppress the statements he made to the police and the information his lawyer gave the

---

[7]629 S.W.2d at 9.

[8]Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App.), per. app. denied
(Tenn. 1980);  Long v. State, 510 S.W.2d 83, 88 (Tenn. Crim. App.), per. app. denied
(Tenn. 1974).

[9]Teague, 722 S.W.2d at 933-34; Brooks, 756 S.W.2d at 289-90; Vermilye, 754
S.W.2d at 84.

[10]794 S.W.2d 752, 755 (Tenn. Crim. App.),per. app. denied (Tenn. 1990).

police. He also contends that he was entitled to have any evidence derived from the statements suppressed.

The body of Felix L. Clanton, Jr., was discovered at 2:35 p.m., on the afternoon of April 16, 1989. The investigation conducted by the Memphis Police Department revealed that the appellant had recently lived with the victim. When the appellant moved out, he gave the victim a check drawn on a closed bank account for his share of the rent. The investigating officers found a note written by the victim to the appellant. The note stated that if the appellant did not make the bad check good within a given number of days, the victim would obtain a warrant for the appellant's arrest and have him arrested. It also stated the victim had recalculated the amount due and set forth the actual amount owed.

The officers found a screen missing from the victim's bedroom window. It was surmised that this was the manner by which the murderer obtained entry into the apartment. A fingerprint comparison revealed that the appellant had handled the screen. The appellant's fingerprints were found inside the apartment. Relatives of the victim advised officers that the victim retained the appellant's clothing and personal effects as collateral for the amount owed by the appellant. A search of the bedroom previously occupied by the appellant revealed that the appellant's clothing and personal effects had been removed from the apartment.

The appellant immediately became a suspect in the murder. Homicide officers began looking for the appellant. The officers left word with the appellant's family and friends that he was a suspect, and they wanted to talk to him. On April 17, 1989, the appellant contacted the officers by telephone. He waited until the officers arrived. He was taken into custody and transported to the Memphis Police Department.

The arresting officers gave the appellant the Miranda warnings. He subsequently gave the officers an oral statement after he arrived at the police station. The statement was given on April 17, 1989, at 7:27 p.m. The statement concluded at 8:50 p.m. The officers described it as an "alibi statement." The appellant stated that he had not seen the victim since April 12, 1989. He told the officers where he had been, the people he saw, and how he was able to travel from one location to another. In short, he accounted for his activities during the time period the victim may have been murdered. He acknowledged

4

that he had given the victim a bad check, but denied that the victim had either written or given him a note regarding the bad check. He also told the officers: "I had no disagreements with Felix. He was like a father to me. We never argued."

The appellant was asked if he would give the officers "a typewritten statement relative to the criminal homicide of your ex room mate, Felix Leroy Clanton, Jr." The appellant stated that he would give such a statement. The appellant was again given the Miranda warnings, and he acknowledged that he understood these warnings. The officer subsequently asked: "Having these rights in mind, do you wish to make a statement?" The appellant responded: "I want an Attorney now."

The officers removed the appellant from the secretary's office. While en route to the officer's office, the appellant stated: "Wait a minute now. I want to give [a] statement. Just don't stop -- I want to tell you about this thing. I want to give a statement." Since he had invoked the right to counsel, the officers refused to take a statement from him. They told the appellant that he would have to hire an attorney or have an attorney appointed to represent him. The officers prepared the necessary "paper work" and took the appellant to the jail.

It is the policy of the Memphis Police Department to advise a suspect in person that he or she is being charged with a serious felony. On April 20, 1989, at 3:30 p.m., Sergeant Bobby G. Garner took the appellant from the jail to his office in the Homicide Bureau. The following colloquy occurred between Sergeant Garner and the appellant:

> Q. Phillip, it is my duty as a police officer to advise you that I am going to charge you with First Degree Murder.
>
> A. Sgt. Garner, I didn't kill Felix. I went over there and got my clothes. I'm not going to jail for somebody else. I'll tell you who killed Felix but I want my lawyer with me when I tell you.
>
> Q. Do you have a lawyer?
>
> A. No, but I'm gonna call my mother and get her to get me one.

Sergeant Garner permitted the appellant to call his mother. He was then taken back to the jail.

The appellant's mother hired an attorney to represent him. The lawyer met privately with the appellant in the Homicide Bureau. The appellant advised the lawyer that he and

5

Lawrence Woods went to the victim's apartment to obtain his clothing and personal effects. According to the appellant, Woods began stabbing the victim while the appellant was in another room. The appellant attempted to get Woods to stop. He stated that he did not participate in the murder or procure Woods to kill the victim. The lawyer advised the officers that Lawrence Woods was the person who killed the victim, not the appellant. This conversation took place in front of the appellant. He did not complain or otherwise remonstrate when the attorney related this information.

When the officers had difficulty locating a Lawrence Woods, they asked the appellant's attorney if he would see if the appellant had additional information regarding Woods. It appears that Woods's first name was Larz, not Lawrence, and the appellant gave the attorney a physical description of Woods as well as additional information. The lawyer relayed this information to the officers. They discovered that Woods had a juvenile record. Information obtained from the juvenile court authorities led to the arrest of Larz Woods.

## A.

In the landmark case of Miranda v. Arizona,[11] the United States Supreme Court, noting the "inherent pressures of the interrogation atmosphere,"[12] formulated warnings that must be given to a suspect before the commencement of custodial interrogation. Miranda requires law enforcement officers to warn a suspect "in clear and unequivocal terms" that (a) "he has the right to remain silent,"[13] (b) "anything said can and will be used against [him] in court,"[14] (c) he has "the right to consult with a lawyer and to have the lawyer with him during interrogation,"[15] and (d) if "indigent a lawyer will be appointed to represent

---

[11]384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[12]Miranda, 384 U.S. at 468, 86 S.Ct. at 1624, 16 L.Ed.2d at 720.

[13]384 U.S. at 468, 86 S.Ct. at 1624, 16 L.Ed.2d at 720.

[14]Miranda, 384 U.S. at 469, 86 S.Ct. at 1625, 16 L.Ed.2d at 720-21.

[15]Miranda, 384 U.S. at 471, 86 S.Ct. at 1626, 16 L.Ed.2d at 723.

him."[16]

The purpose of the Miranda warnings is clear.  First, the suspect is informed of the privilege against self-incrimination.  Second, the suspect is informed of the consequences of waiving his privilege against self-incrimination.  Third, the suspect is informed that he has a right to consult with a lawyer before being interrogated, and, if desired, to have the lawyer present during the interrogation.

The holding in Miranda is limited to "custodial interrogations."[17]  The Court defined the phrase "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."[18]  A person is "in custody" within the meaning of Miranda if there has been "a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."[19]  The Court has refused to extend Miranda to non-custodial interrogations.[20]

There is "no talismanic incantation . . . required to satisfy [Miranda's] strictures."[21]  However, the actual warnings given to the suspect must be a "fully effective equivalent" of the Miranda warnings.[22]

---

[16]Miranda, 384 U.S. at 473, 86 S.Ct. at 1627, 16 L.Ed.2d at 723.

[17]See Stansbury v. California, 511 U.S. _____, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994);  Minnesota v. Murphy, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984); California v. Beheler, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983); Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); Beckwith v. United States, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); State v. Smith, 868 S.W.2d 561 (Tenn. 1993); State v. Brown, 836 S.W.2d 530 (Tenn. 1992);  State v. House, 743 S.W.2d 141 (Tenn. 1937), cert. denied, 498 U.S. 912, 111 S.Ct. 284, 112 L.Ed.2d 239 (1990);  State v. Davis, 735 S.W.2d 854 (Tenn. Crim. App.), per. app. denied (Tenn. 1987);  State v. Stapleton, 638 S.W.2d 850 (Tenn. Crim. App.), per. app. denied (Tenn. 1982).

[18]Miranda, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706.

[19]Beheler, 463 U.S. at 1125, 103 S.Ct. at 3520, 77 L.Ed.2d at 1279 (quoting Mathiason, 429 U.S. at 495, 97 S.Ct. at 714, 50 L.Ed.2d at 719).

[20]See Beckwith, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976) (an accused was not entitled to the Miranda warnings when special agents of the Internal Revenue Service questioned Beckwith in the dining room of his home).

[21]California v. Prysock, 453 U.S. 355, 359, 101 S.Ct. 2806, 2809, 69 L.Ed.2d 696, 701 (1981).

[22]Prysock, 453 U.S. at 359-60, 101 S.Ct. at 2809, 69 L.Ed.2d at 701; see also Duckworth v. Eagan, 492 U.S. 195, 202, 109 S.Ct. 2875, 2880, 106 L.Ed.2d 166, 176 (1989).

**B.**

When a suspect clearly articulates[23] during custodial interrogation that he wishes to invoke the privilege against self-incrimination[24] or the right to counsel,[25] the officers conducting the interrogation must stop questioning the suspect.[26] As the United States Supreme Court said in Miranda:

> If . . . [the suspect] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned.[27]

In this case, the appellant invoked the right to consult with counsel or have counsel present before being interrogated. The officers honored this right by ceasing the interrogation. When the appellant attempted to talk to the officers after invoking this right, the officers refused to talk with him until he was represented by counsel. The officers did not attempt to interrogate the appellant thereafter. When counsel was retained by the appellant's family to represent him, the officers directed all of their inquiries to counsel, not the appellant. The appellant did not complain or remonstrate when he heard the lawyer relaying the information to the officers.

**C.**

---

[23]Davis v. United States, 512 U.S. _____, 114 S.Ct. 2350, 2355, 129 L.Ed.2d 362, 371-72 (1994).

[24]See Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

[25]See Minnick v. Mississippi, 498 U.S. 146, 111 S.Ct. 486, 491, 112 L.Ed.2d 489, 497-98 (1990); Edwards, supra; State v. Tidwell, 775 S.W.2d 379, 386-87 (Tenn. Crim. App.), per. app. denied (Tenn. 1989).

[26]Miranda, 384 U.S. at 444-45, 86 S.Ct. at 1612, 16 L.Ed.2d at 707.

[27]384 U.S. at 444-45, 86 S.Ct. at 1612, 16 L.Ed.2d at 707.

8

If a suspect initiates contact with a law enforcement officer after invoking the right to confer with and have counsel present, the law enforcement officer may converse with the suspect.[28] What the suspect tells the officer is admissible as evidence if it is established at the suppression hearing that (a) the accused initiated the contact with the officer and (b) the waiver is knowingly and intelligently made.[29]

Volunteered, spontaneous statements made by a suspect are also admissible as evidence if not the product of interrogation.[30] In Miranda v. Arizona, the United States Supreme Court said that "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."[31]

The statements introduced into evidence were clearly spontaneous, volunteered statements. They were not the product of interrogation as the appellant contends. Moreover, Sergeant Garner testified that he had no intention of questioning the appellant on April 20th. He continued to honor the appellant's invocation of the right to confer with counsel and have counsel present. Moreover, no information was obtained from the

---

[28]Oregon v. Bradshaw, 462 U.S. 1039, 1044, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405, 411-12 (1983); State v. Claybrook, 736 S.W.2d 95, 103 (Tenn. 1987); see Smith v. Illinois, 469 U.S. 91, 95, 105 S.Ct. 490, 492, 83 L.Ed.2d 488, 493-94 (1984); Edwards, 451 U.S. at 485, 101 S.Ct. at 1885, 68 L.Ed.2d at 386; Tidwell, 775 S.W.2d at 386-87.

[29]Bradshaw, 462 U.S. at 1044, 103 S.Ct. at 2834, 77 L.Ed.2d at 411-12; Tidwell, 775 S.W.2d at 386.

[30]Miranda, 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726; State v. Hurley, 876 S.W.2d 57, 65-6 (Tenn. 1993), cert. denied ____ U.S. ____, 115 S.Ct. 328, 130 L.Ed.2d 287 (1994); State v. McNish, 727 S.W.2d 490, 496 (Tenn), cert. denied, 484 U.S. 873, 108 S.Ct. 210, 98 L.Ed.2d 161 (1987); State v. Luellen, 867 S.W.2d 736, 739 (Tenn. Crim. App. 1992); State v. Brown, 664 S.W.2d 318, 321 (Tenn. Crim. App. 1983), per. app. denied (Tenn. 1984); State v. Chavis, 617 S.W.2d 903, 905-06 (Tenn. Crim. App., 1980), per. app. denied (Tenn. 1981); State v. James Rines, Cocke County No. 03-C-01-9204-CR-00115 (Tenn. Crim. App., Knoxville, January 13, 1993), per. app. denied (Tenn. 1993); State v. Harrison Dale Harville, Hamblen County No. 03-C-01-9110-CR-00337 (Tenn. Crim. App, Knoxville, March 31, 1992), per. app. denied (Tenn. 1992); State v. Larry Fields, Fayette County No. 11 (Tenn. Crim. App., Jackson, March 20, 1991) per. app. denied (Tenn. 1991); State v. Simon Nelson, Madison County No. 2 (Tenn. Crim. App., Jackson, April 25, 1990), per. app. denied (Tenn. 1990); State v. David Jerome Williams, Knox County No. 1146 (Tenn. Crim. App., Knoxville, January 25, 1988); State v. B. R. Russell and David Russell, Loudon No. 62, 63 (Tenn. Crim. App., Knoxville, September 15, 1987), per. app. denied (Tenn. 1987); State v. Roscoe Leonard Perry, Hamilton County No. 987 (Tenn. Crim. App., Knoxville, April 14, 1987), per. app. denied (Tenn. 1987); State v. Charles Blankenship, Sullivan County No. 727 (Tenn. Crim. App., Knoxville, March 23, 1987); State v. James Eddie Sherrill, Loudon County No. 59 (Tenn. Crim. App., Knoxville, December 15, 1986). See Oregon v. Bradshaw, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983).

[31]384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.

9

appellant between the time he invoked the right to counsel and counsel conferred with him. On each occasion that the officers desired information, the inquiries were directed to appellant's counsel, not the appellant, and the information was relayed through counsel.

## D.

The appellant is not entitled to relief on this ground. He has failed to establish that his lawyers rendered ineffective assistance of counsel or that he was prejudiced by their representation. The appellant told his attorneys that he freely and voluntarily made the statements attributed to him. The appellant did not refute this fact at the evidentiary hearing. His testimony was marked with such answers as "I don't know," "I can't recall," and "I'm relying on my lawyer."

The defense attorneys stated that they did not move to suppress the statements for two reasons. First, there was no basis in fact or law to have the statements suppressed. Second, the attorneys wanted the statements to come into evidence because the statements supported the appellant's theory that Woods killed the victim. The alibi statement was not introduced into evidence.

The trial court could reasonably conclude that the appellant made the statements in question in an effort to clothe himself in innocence while casting the blame for the murder on his friend, Woods. This formed the core of his defense. He testified against the advice of counsel. He related to the jury that he was in another room when he apparently heard Woods kill the victim. He went into the bedroom, saw Woods cutting the victim's throat and stabbing the victim's chest, and he made a concerted effort to pull Woods away from the victim. In the end, the appellant's scheme to cast the blame on Woods backfired. Woods, a co-defendant, testified as a prosecution witness.

This issue is without merit.

## III.

10

The appellant poses the second issue in terms of ineffective assistance of counsel. However, the appellant also challenges the sufficiency of the evidence and the sufficiency of the instruction given by the trial court on the issues of premeditation and deliberation. He argues that this Court should determine whether the evidence was sufficient to support his conviction of murder in the first degree, grant him relief on the basis of the instruction given by the trial court, and find that counsel rendered ineffective assistance of counsel because they did not challenge the instruction or offer a special request.

## A.

There are two reasons why the appellant is not entitled to relief based on the sufficiency of the evidence in this case. First, the appellant raised this issue on direct appeal and this Court ruled upon the merits of the issue. Therefore, this issue has been previously determined within the meaning of Tenn. Code Ann. §§ 40-30-111 and -112. Second, as a general rule, a petitioner is not entitled to relitigate the sufficiency of the evidence in a post-conviction proceeding.[32]

This subissue is clearly without merit.

---

[32]Long v. State, 510 S.W.2d 83, 86 (Tenn. Crim. App.), cert. denied (Tenn. 1974); Gant v. State, 507 S.W.2d 133, 137 (Tenn. Crim. App.), cert. denied (Tenn. 1974); Ray v. State, 489 S.W.2d 849, 851 (Tenn. Crim. App.), cert. denied (Tenn. 1972); Parton v. State, 483 S.W.2d 753, 755 (Tenn. Crim. App.), cert. denied (Tenn. 1972).

**B.**

There are also two reasons why the appellant is not entitled to relief based on the Supreme Court's decision in State v. Brown.[33]  Brown did not create a constitutional right and it is not to be applied retroactively.

First, the appellant was not entitled to litigate this issue based upon the facts of this case.  Tenn. Code Ann. § 40-30-105 states:

> Relief under this chapter shall be granted when the conviction or sentence is void or voidable because of the abridgement in any way of any right guaranteed by the constitution of this state or the Constitution of the United States, including a right that was not recognized as existing at the time of trial if either constitution requires retrospective application of that right.

Brown did not create a new constitutional right.[34]  In John Wayne Slate v. State, a panel of this Court, addressing the same issue now before this Court, stated:  "[T]he mere fact that such an instruction has been abandoned as confusing does not necessarily mean that its previous use equated with a due process violation rendering a first degree murder conviction void.  That is, trial errors may occur which could result in a reversal on direct appeal but which do not implicate the fundamental rights which are of concern in a post-conviction proceeding."[35]

In the recent case of Overton v. State,[36] the petitioner contended that he was denied his constitutional right to the effective assistance of counsel because counsel failed to object to an erroneous instruction given by the trial court in an aggravated rape prosecution.  The trial court instructed the jury on the offense of aggravated rape as it then existed, rather than the offense that existed when the crime was committed.  There was a difference in the elements of the two offenses.  In holding that the petitioner was not

---

[33]836 S.W.2d 530 (Tenn. 1992).

[34]John Wayne Slate v. State, Sevier County No. 03-C-01-9201-CR-00014 (Tenn. Crim. App., Knoxville, April 27, 1994), app. denied, concurring in results only (Tenn. 1994).

[35]John Wayne Slate v. State, Sevier County No. 03-C-01-9201-CR-00014, slip op. at 8.  Slate was followed in Stephen Michael Bell v. State, Davidson County No. 01-C-01-9304-CR-00130 (Tenn. Crim. App., Nashville, August 4, 1994), slip op. at 5-6.

[36]874 S.W.2d 6 (Tenn. 1994).

12

entitled to post-conviction relief based on this error, the Supreme Court said:

> Although this instruction may well have constituted reversible error in this case, we agree with the Court of Criminal Appeals that it is not a cognizable ground for relief in a post-conviction petition. Relief may be granted on a post-conviction petition only when the sentence or conviction is void or voidable because it contravenes a state or federal constitutional right of the defendant. Tenn. Code Ann. § 40-30-105; State v. Neal, 810 S.W.2d 131 (Tenn. 1991). Moreover, to allow every error committed by the trial court to be recast in a post-conviction petition as an ineffective assistance of counsel allegation would be to subvert the limited purposes of the post-conviction procedure.[37]

In summary, this Court holds that the jury instruction given in this case, although condemned in Brown, did not per se raise a constitutional issue in the context of this case. Thus, the appellant is not entitled to relief based on this violation.

Second, the rule announced in Brown is to be applied prospectively -- not retrospectively as the appellant contends. This Court has held in numerous direct appeals of conviction, as well as post-conviction appeals, that Brown is to be applied prospectively.[38] The Supreme Court has denied the petitioner's application for permission to appeal in practically every case. The appellant acknowledges that this is the rule. However, he has made an effort to convince this Court that the rule should be otherwise. The doctrine of stare decisis requires that this Court follow the unwavering prior precedent.

This subissue is without merit.

---

[37]874 S.W.2d at 11-12.

[38]See, for example, Richard Caldwell v. State, Madison County No. 02-C-01-9405-CC-00099 (Tenn. Crim. App., Jackson, December 28, 1994); Rodney Bernard Bibbs v. State, Shelby County No. 02-C-01-9303-CR-00037 (Tenn. Crim. App., Jackson, August 31, 1994), per. app. denied (Tenn. 1994); Stephen Michael Bell, Davidson County No. 01-C-01-9304-CR-00130 (Tenn. Crim. App., Nashville, August 4, 1994); State v. Joe Nathan Person, Madison County No. 02-C-01-9205-CC-00106 (Tenn. Crim. App., Jackson, September 29, 1993), per. app. denied (Tenn. 1994); State v. William Paul Roberson, Putnam County No. 01-C-01-9206-CC-00200 (Tenn. Crim. App., Nashville, February 25, 1993), per. app. denied (Tenn.1993); State v. David Lee Richards, Hamilton County No. 03-C-01-9207-CR-00230 (Tenn. Crim. App., Knoxville, March 23, 1993), per. app. denied (Tenn. 1993); State v. Clonte J. Thomas, Shelby County No. 02-C-01-9112-CR-00262 (Tenn. Crim. App., Jackson, January 27, 1993), per. app. denied, concurring in results only (Tenn. 1993); State v. Willie Bacon, Jr., Hamilton County No. 1164 (Tenn. Crim. App., Knoxville, August 4, 1992), per. app. denied (Tenn. 1992).

## C.

Finally, the appellant claims that he was denied his constitutional right to the effective assistance of counsel because counsel failed to object to the trial court's instruction regarding premeditation and deliberation. He predicates this argument on the holding in <u>Brown</u>. There are three reasons why the appellant cannot prevail on this issue.

First, counsel were not ineffective for failing to object to the instruction given by the trial court. The instruction had been given in first degree murder cases for years. It was part of the Tennessee Jury Pattern Instructions on first degree murder. The trial court would have given the instruction even if there had been an objection to the instruction. Furthermore, trial counsel were not visionaries. It was impossible for them to foresee that approximately three years later the Tennessee Supreme Court would hold that the "split second" instruction was improper.

Second, the Supreme Court's decision in <u>Overton v. State</u>[39] is applicable to this case. While it is <u>possible</u> that either this Court or the Supreme Court may have reached the same conclusion as <u>Brown</u> and reversed his conviction, the failure to object to the instruction does not equate to a valid ineffective assistance claim.

Third, the appellant contended that he was not guilty for the reason hereinabove set forth. In other words, he gambled that the jury would believe him. An argument that he might be guilty of a lesser included offense would have weakened or undermined his argument of innocence. The instruction did not impact upon this defense.

This subissue is also without merit.

 

_____
JOE B. JONES, JUDGE

 

CONCUR:

---

[39]874 S.W.2d 6 (Tenn. 1994).

_____
JOSEPH M. TIPTON, JUDGE


_____
JOHN K. BYERS, SENIOR JUDGE

15