# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
November 5, 2009 Session

## STATE OF TENNESSEE v. THOMAS L. TURNER, II

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Rutherford County**
**No. F-60192B    Don R. Ash, Judge**

---

**No. M2008-00482-SC-R11-CO - Filed March 19, 2010**

---

During the course of an investigation for a robbery and homicide, officers provided <u>Miranda</u> warnings to the defendant, who sought clarification regarding his right to the presence of counsel. Ultimately, the defendant executed a waiver and made a statement to police. Indicted later for first degree murder and other offenses, the defendant filed a motion to suppress his entire statement, arguing that the investigating officers had failed to honor an unequivocal invocation of his right to counsel. The trial court granted the motion, the State received permission to take an interlocutory appeal, and the Court of Criminal Appeals reversed. We accepted the application for review to determine whether the defendant was equivocal in his request for counsel and, if so, whether the police properly limited further questions to the clarification of his right to counsel until the right was either clearly invoked or waived. Because the defendant did not clearly assert his right and the police officers limited the scope of their questions until the defendant chose to execute the waiver of rights form, the judgment of the Court of Criminal Appeals is affirmed.

**Tenn. R. App. P. 11; Judgment of the Court of Criminal Appeals Affirmed**

GARY R. WADE, J., delivered the opinion of the Court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Kerry Knox, Murfreesboro, Tennessee, for the appellant, Thomas L. Turner, II.

Robert E. Cooper, Jr., Attorney General & Reporter; Michael E. Moore, Solicitor General; Mark A. Fulks, Senior Counsel; William C. Whitesell, Jr., District Attorney General; and J. Paul Newman, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Facts and Procedural History

On the night of February 8, 2007, Tiana Klimpel was shot and killed outside of her apartment building in Smyrna. At approximately 9:00 a.m. on the following day, Thomas L. Turner, II (the "Defendant") and his co-defendant, Kelando Starnes, were arrested by Smyrna police. Within three hours, Detective Kevin Hodges and Lieutenant Todd Spearman began questioning the Defendant in a small room at the police department. The video recording of the interview, which is a part of the record, establishes that the police officers were seated on one side of a small table while the Defendant was seated on the other side with his back to the closed entrance door.[1] Detective Hodges and Lieutenant Spearman wore identical wind shirts with "Smyrna Police" printed on the front. Detective Hodges asked the Defendant if he wanted anything to drink, and when he stepped out of the room to get a soft drink for the Defendant, the following exchange occurred between the Defendant and Lieutenant Spearman:

> THE DEFENDANT: Are you my lawyer?
> SPEARMAN: No, sir, I'm a police officer.
> THE DEFENDANT: I . . . can get a lawyer, right?
> SPEARMAN: That's your option.

Detective Hodges returned to the room within two minutes and read the Defendant his Miranda rights.[2] Afterward, the following discussion took place:

> HODGES: You understand all those?
> THE DEFENDANT: Yes.
> HODGES: Okay. Are you willing to sit down with us and talk about what happened last night?
> THE DEFENDANT: Yeah, I . . . can talk to you.
> HODGES: Okay.

About fifteen seconds later, after Lieutenant Spearman had asked the Defendant about his educational level, another exchange occurred:

> HODGES: Alright, so you agree with all that, and you're willing to talk to us?

---

[1] The excerpts from the interview transcribed herein are based upon our independent review of the video recording.

[2] See Miranda v. Arizona, 384 U.S. 436, 444-45 (1966).

THE DEFENDANT: Yeah, I could talk–

HODGES: Okay.

THE DEFENDANT: But . . . anything I say can be held against me, right?

HODGES: Yes, sir, that's one of your rights.

THE DEFENDANT: Um, how quick will my lawyer get here?

HODGES: Well, that's . . . up to you. If you wish to speak with an attorney then we're not going to ask you any questions, okay?

THE DEFENDANT: If, uhh–

SPEARMAN: Now that's your option.

HODGES: Yeah, that's your option.

SPEARMAN: That's something that . . . you know, once you do request that we won't speak anymore, so–

THE DEFENDANT: I'm talking about . . . will my lawyer be here today?

SPEARMAN AND HODGES: Have you called one?

THE DEFENDANT: I ain't even got a phone call yet.

HODGES: Okay.

THE DEFENDANT: I mean, to be honest, this is my first time, I mean, I'm on probation already. I never did anything. I've never been in trouble a day of my life. . . .

. . . .

HODGES: Well, I mean, these are . . . your rights. You're the one that has to say whether you want to talk to an attorney or not.

THE DEFENDANT: Let's hear them. What kind of questions do you have?

HODGES: Okay. Well . . . you're agreeing that you do want to speak with us now without someone present, without a lawyer present, right?

THE DEFENDANT: Correct.

HODGES: Okay.

THE DEFENDANT: I mean, then–I can stop at any time–

SPEARMAN: At any time you want.

THE DEFENDANT: –and get my lawyer.

SPEARMAN: Yes, at any time that you want to.

HODGES: Yes, you sure can.

THE DEFENDANT: Because really I don't know the system, you know, so I–

SPEARMAN: Let me–I'll make it a little bit more simple for you. We wish to ask you questions, okay? We wish to ask you questions about some stuff that happened. According to this, you have a right to a lawyer present, okay? That's your option. You know, do you want a lawyer present right now? Just yes or no.

THE DEFENDANT: I could–if I could afford one.

HODGES: It's not up to whether you afford one or not–

THE DEFENDANT: Oh, I can get one rather or not?

HODGES: Yes, sir.

THE DEFENDANT: And he can come today?

SPEARMAN: If you got one that you can call.

THE DEFENDANT: Can I–my phone, my phone is right there in that little envelope–can you go get it for me?[3]

HODGES: Well, I tell you what–we've got a phone that you can use if you want.

THE DEFENDANT: I mean, the number's in my cell phone, the lawyer.

HODGES: Okay, so you already have an attorney then?

THE DEFENDANT: Yeah.

SPEARMAN: Who's your attorney?

The Defendant explained that his cell phone contained the phone number of a lawyer from a pre-paid legal service, which he had previously obtained in anticipation of court proceedings in an unrelated matter. The officers and the Defendant then engaged in further conversation:

HODGES: Okay. Basically . . . what you're telling me is that you really don't want to talk to us right now and you would rather speak to an attorney?

THE DEFENDANT: I mean, I could talk, 'cause I could tell you–

HODGES: Well, I don't want to force you to do anything that you don't want to do, okay? I'm not here to do that.

THE DEFENDANT: I just wanted to hear what you had to say.

HODGES: Well, I mean, it's one of th[ose] two way streets. Either you want to talk to me and we'll sit down and talk, or you don't.

SPEARMAN: Or you want an attorney. It's that simple.

HODGES: It's . . . that simple.

THE DEFENDANT: All right, I'll talk to you.

HODGES: Okay. All right then, what I need you to do, okay, and you can read these if you wish–

THE DEFENDANT: And I can stop at any time, right?

HODGES: Yes, sir.

THE DEFENDANT: And get my lawyer?

HODGES: Yes, sir.

---

[3] The video recording shows that Lieutenant Spearman, who had a notebook open in front of him on the table, closed the notebook after the Defendant asked this question.

Afterward, Detective Hodges explained the purpose and content of the <u>Miranda</u> waiver form. The Defendant read the form silently and, after initialing it, submitted to the interrogation.[4] The Defendant subsequently made a number of incriminating statements that led to his eventual indictment for his role in the murder and robbery of Klimpel.

At 1:26 p.m., after being questioned for nearly an hour-and-a-half, the Defendant slammed his hand down on the table and stated unequivocally that he wanted to speak to an attorney:

> THE DEFENDANT: I'll tell you what. Get me a lawyer, and–and I'm through. Get me a lawyer, and I'll tell the lawyer exactly everything that went down. I had nothing to do with it. I can't afford one, I need a lawyer. Cause this is getting out of hand, I'm telling you man.
> HODGES: I understand.
> THE DEFENDANT: Real talk, man.
> HODGES: Cool.
> THE DEFENDANT: I–it wasn't me.
> HODGES: Okay. All right, then. All right. That's cool.
> THE DEFENDANT: I want to go home today.
> HODGES: Hey, hey, hey. You've already–you've already asked for an attorney, okay? So do me a favor, and don't say anything else, all right?

At that point, Detective Hodges, who by then was alone in the room with the Defendant, ended the interview.

On May 8, 2007, some three months after the arrest, both the Defendant and a co-defendant were indicted on charges of conspiracy to commit robbery, especially aggravated robbery, first degree felony murder, first degree premeditated murder, possession of ecstasy with intent to deliver or sell, and possession of marijuana with the intent to deliver or sell. Afterward, the Defendant filed a motion to suppress his entire statement to the police, contending that because "[he] had little sleep, had been under the influence of drugs, and had been in custody for some time," the statements were the result of coercion. Later, he amended the motion on "the basis that he [had] unequivocally, unconditionally requested counsel prior to" the interrogation and, therefore, his statements were inadmissible as evidence.

Both Detective Hodges and Lieutenant Spearman appeared as witnesses at the hearing

---

[4] The <u>Miranda</u> waiver form, which was entered into evidence at the suppression hearing, indicates that the Defendant waived his rights by signing the form at 12:05 p.m. on February 9, 2007.

on the motion to suppress. The Defendant did not testify. Detective Hodges testified that, in his opinion, the Defendant, after considering his options, knowingly and voluntarily waived his right to counsel before making a statement to police. He stated that the Defendant "appeared fine" during the interview and understood "that if he had any questions about any of his rights that we would explain those to him [and] . . . he could stop answering at any time." While Detective Hodges acknowledged that the Defendant had initially claimed that "he had an attorney," the Defendant immediately explained, "Actually I've got prepaid legal service." Detective Hodges also recalled that the Defendant asked for his cell phone at one point in order to find his legal services number. Detective Hodges insisted that the Defendant did not make an unequivocal request for an attorney until after they "had been in the interview for over an hour," and that when the Defendant did so, the interview was ended.

Lieutenant Spearman testified that he had been trained to stop an interrogation whenever he heard an unequivocal request for an attorney. Like Detective Hodges, he did not believe that the Defendant expressed an unambiguous desire for counsel until nearly an hour-and-a-half into the interview. According to Lieutenant Spearman, the Defendant did not seem to be under the influence of drugs or alcohol, nor was he coerced to provide answers during the course of the interrogation.

While specifically accrediting the officers' testimony as to the Defendant's mental state at the time of the interview and observing that the Defendant's custodial statements should not be suppressed on grounds "of coercion, intoxication, or lack of sleep," the trial court nevertheless granted the motion to suppress, concluding that the contents of the video recording established that the police continued the interrogation after "an unequivocal request for an attorney." The order provides, in part, as follows:

> [N]ot all of the statements are unequivocal requests for an attorney. For instance, questions regarding whether the detective is his attorney, how quick it will take his attorney to arrive, whether his attorney will arrive today, whether he can get an attorney without money, and whether he needs an attorney are all ambiguous requests. However, this Court is of the belief when the Defendant asked the detectives to retrieve his cell phone so he could call his attorney, he was making an unequivocal request for an attorney. This statement, coupled with the entire surrounding circumstances and prior [al]luding to an attorney support this Court's finding the Defendant's statement to the Smyrna Police should be suppressed to the extent the Detectives continued questioning the Defendant after he asked to retrieve his attorney's phone number.

(Emphasis added.)  Afterward, the trial court granted the State's request for an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.  The Court of Criminal Appeals reversed the order of suppression, holding that the Defendant had failed to make an unequivocal request for counsel at the outset of the interview, and ruling, therefore, that his subsequent statements could be admitted into evidence.  State v. Turner, No. M2008-00482-CCA-R9-CO, 2009 WL 426260 (Tenn. Crim. App. Feb. 20, 2009).  We granted the Defendant's application for permission to appeal in order to address whether his reference to counsel qualified as equivocal or unequivocal and to clarify the rules applicable to these specific circumstances.

## Standard of Review

When considering an appeal from a trial court's ruling on a motion to suppress, the trial court's findings of fact in the suppression hearing should be upheld unless the evidence preponderates to the contrary.  State v. Hanning, 296 S.W.3d 44, 48 (Tenn. 2009).  Generally, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact."  State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).  "But when a court's findings of fact at a suppression hearing are based solely on evidence that does not involve issues of credibility, such as . . . videotape evidence . . . , the rationale underlying a more deferential standard of review is not implicated."  State v. Binette, 33 S.W.3d 215, 217 (Tenn. 2000) (analogizing the review of videotape evidence to the review of medical testimony that is given by deposition in workers' compensation cases).  "In such circumstances, a trial court's findings of fact are subject to de novo appellate review."  State v. Payne, 149 S.W.3d 20, 25 (Tenn. 2004).  Here, because the trial court explicitly based its decision to grant the motion to suppress on its review of the video recording of the interrogation, which is equally available on appellate review, the Binette standard applies.  See 33 S.W.3d at 217.  Of course, our scope of review on questions of law is de novo, Hanning, 296 S.W.3d at 48, and "[t]he application of the law to the facts . . . is a question of law."  State v. Turner, 297 S.W.3d 155, 160 (Tenn. 2009).

Our Court of Criminal Appeals has often held that whether an individual's request for counsel was equivocal or unequivocal is a question of fact.  State v. Farmer, 927 S.W.2d 582, 594 (Tenn. Crim. App. 1996); see also State v. Berry, 141 S.W.3d 549, 576 (Tenn. 2004); State v. Nash, No. E2008-00951-CCA-R3-CD, 2009 WL 2461178, at *4 (Tenn. Crim. App. Aug. 12, 2009); State v. Osborne, No. M2005-02926-CCA-R3-CD,  2007 WL 1890176, at *8 (Tenn. Crim. App. June 29, 2007).  In practice, however, our intermediate appellate court has more properly considered the issue as a mixed question of law and fact and has not afforded deference to the rulings of trial courts.  This is consistent with the approach taken in other jurisdictions.  In fact, we were unable to find any reported decisions from appellate courts outside of this state that have reviewed the nature of a request for counsel as purely

a question of fact.  See, e.g., People v. Porter, 878 N.E.2d 998, 999 (N.Y. 2007); State v. Dumas, 750 A.2d 420, 425 (R.I. 2000); Commonwealth v. Redmond, 568 S.E.2d 695, 697-98 (Va. 2002).  Nevertheless, whether the trial court's determination is a question of fact or a mixed question of law and fact does not affect our standard of review in this instance.  As stated, because the trial court's determination was based upon the same video evidence in this record, our review is de novo.

### Background

The Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides individuals with the right to have counsel present during a custodial interrogation.[5]  The Supreme Court has defined "custodial

---

[5] In contrast,

> [t]he Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."  U.S. Const. amend VI.  A defendant has the right to counsel at all "'critical' stages in the criminal justice process 'where the results might well settle the accused's fate and reduce the trial itself to a mere formality.'"  Maine v. Moulton, 474 U.S. 159, 170 (1985) (quoting United States v. Wade, 388 U.S. 218, 224 (1967)).

> The United States Supreme Court has long held that "the [Sixth Amendment] right to counsel attaches only at or after the initiation of adversary proceedings against the defendant . . . .  '[W]hether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'"  United States v. Gouveia, 467 U.S. 180, 187-88 (1984) (quoting Kirby v. Illinois, 406 U.S. 682, 688-89 (1972)). This interpretation achieves the underlying purposes of the Sixth Amendment:

> > That interpretation of the Sixth Amendment right to counsel is consistent not only with the literal language of the Amendment, which requires the existence of both a "criminal [prosecution]" and an "accused," but also with the purposes which we have recognized that the right to counsel serves . . . .  The "core purpose" of the counsel guarantee is to assure aid at trial, "when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor."  United States v. Ash, 413 U.S. 300, 309 (1973)[; see also] Johnson v. Zerbst, 304 U.S. 458, 462-463 (1938). . . .

> Id. at 188-89.

State v. McWhorter, No. M2004-02804-CCA-R3-CD, 2005 WL 3332755, at *6 (Tenn. Crim. App. Dec. 6, 2005).  In Tennessee, the Sixth Amendment right to counsel attaches with the initiation of criminal charges through an arrest warrant, a preliminary hearing (if no arrest warrant is issued), or an indictment or presentment (when the charge is initiated by the grand jury).  State v. Mitchell, 593 S.W.2d 280, 286 (Tenn.
(continued...)

interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444; see also Malloy v. Hogan, 378 U.S. 1, 6 (1964) (holding that the Fifth Amendment's protection against self-incrimination is applicable to the states through the Fourteenth Amendment). Article I, section 9 of the Tennessee Constitution, which provides "[t]hat in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself," also encompasses the right to counsel "during police-initiated custodial interrogation." State v. Saylor, 117 S.W.3d 239, 244 (Tenn. 2003). Police must inform an individual of his right to counsel prior to custodial interrogation. Miranda, 384 U.S. at 444-45. The individual may affirmatively waive the right to counsel, but if at any point during questioning he asserts the right, all questioning must cease until an attorney is present or the accused himself initiates further communication with the police. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981); Saylor, 117 S.W.3d at 244; State v. Stephenson, 878 S.W.2d 530, 547-48 (Tenn. 1994). Any "fruits" of a custodial interrogation conducted absent informing an individual of his Miranda rights, or any information acquired in a police interview after the individual affirmatively invokes his right to counsel, must be suppressed. See Edwards, 451 U.S. at 485.[6]

While Miranda and Edwards set forth a bright-line rule with regard to invocation of the right to counsel, subjects of an interrogation do not always clearly and unambiguously assert that right. The question of precisely what constitutes the invocation of counsel has often been the subject of litigation, and was specifically addressed by the Supreme Court in Davis v. United States, 512 U.S. 452 (1994). Davis, a member of the United States Navy, was questioned after a fellow sailor with whom he had a dispute over a game of pool was found beaten to death with a pool cue. Id. at 454. About an hour-and-a-half into the interview, Davis, who had already signed a waiver of his right to counsel under military law, remarked: "Maybe I should talk to a lawyer." Id. at 455. The interviewing agents attempted to clarify whether Davis was asking for a lawyer at that point, but continued the interview when he responded in the negative. Id. An hour later, after incriminating himself with certain of his answers, Davis said, "I think I want a lawyer before I say anything else," and the interview was ended. Id. Davis sought to suppress the statements made subsequent to his initial reference to an attorney. Id. at 455.

---

[5](...continued)
1980).

[6] The Supreme Court recently held that a break in the custodial interrogation of fourteen days is sufficient to end the Edwards presumption that any statements made by the individual after invoking his right to counsel must be suppressed. Maryland v. Shatzer, 130 S.Ct. 1213, ____, 2010 WL 624042, at *8 (Feb. 24, 2010).

Writing on behalf of the majority, Justice Sandra Day O'Connor reaffirmed the "'"rigid" prophylactic rule' of *Edwards*" which mandates the cessation of a police interrogation upon an unequivocal request for an attorney, but observed that the rule necessarily "requires courts to 'determine whether the accused *actually invoked* his right to counsel.'" Id. at 458 (quoting Smith v. Illinois, 469 U.S. 91, 95 (1984)). The opinion further provides that

> if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning.
>
> . . . . Although a suspect need not "speak with the discrimination of an Oxford don," he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, *Edwards* does not require that the officers stop questioning the suspect.

Id. at 459 (internal citations omitted) (second emphasis added). Thus, under Davis, a court considering whether an interrogation suspect invoked his Fifth Amendment right to counsel after having executed a Miranda rights waiver must make an objective inquiry as to whether a reasonable officer, in light of the circumstances, would have known that the suspect was clearly and unambiguously asserting that right.

Although we have intimated that the right to counsel under article I, section 9 of the Tennessee Constitution may, in some circumstances, be applied more broadly than the Fifth Amendment,[7] we also have held that the validity of an accused's invocation of his or her right to counsel is not one of those circumstances. Saylor, 117 S.W.3d at 246. Instead, we have applied the Davis standard, which requires a determination of whether an invocation of the right to counsel under the Fifth Amendment is unequivocal, to analyze requests for counsel under article I, section 9 of our state constitution. Id. (citing State v. Huddleston, 924 S.W.2d 666, 670 (Tenn. 1996)).

In Saylor, a suspect, after being detained at police headquarters, made a series of

---

[7] In State v. Smith, 834 S.W.2d 915, 918 (Tenn. 1992), in which the voluntariness of a confession was at issue, this Court observed that article I, section 9 of our state constitution may apply more broadly than its Fifth Amendment counterpart "based upon considerations other than, and in addition to, the difference in terminology."

statements to a Johnson City police officer. Id. at 243-44. During their preliminary conversation, Saylor said, "I guess it don't matter until I can get a lawyer present." Id. at 243. At other points he remarked, "I'm supposed to have a lawyer though, don't I," "I have to have a lawyer present, I reckon," and "I might need a lawyer because somebody might try to accuse me of something I didn't do." Id. at 243-44. Afterward, he signed the form waiving his Miranda rights and confessed to the crime. Id. at 244. Applying Davis, this Court held that "[n]o reasonable police officer in these circumstances would understand Saylor's remarks to be an unequivocal request for an attorney." Id. at 246-47. Over the past several years, the Court of Criminal Appeals has faithfully applied the standard set forth in Davis and Saylor in several of its decisions.[8] We continue to use the objective standard to determine whether a suspect's invocation of his right to counsel was clear and unequivocal.

In Saylor, this Court did not differentiate between an ambiguous request for counsel that occurs prior to the waiver of Miranda rights and one that is made after the right to counsel is waived. In Davis, of course, the suspect's equivocal invocation of his right to counsel occurred well after he had executed a written waiver. 512 U.S. at 455. The Supreme Court "h[e]ld that, after a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." Id. at 461 (emphasis added). The Court reasoned that

> [a] suspect who knowingly and voluntarily waives his right to counsel after having that right explained to him has indicated his willingness to deal with the police unassisted. Although *Edwards* provides an additional protection–if a suspect subsequently requests an attorney, questioning must cease–it is one that must be affirmatively invoked by the suspect.

Id. at 460-61. The high court has also explained that "[i]nvocation [of the right to counsel] and waiver [of that right] are entirely distinct inquiries, and the two must not be blurred by merging them together." Smith, 469 U.S. at 98.

---

[8] See, e.g., State v. Ragland, No. W2008-02065-CCA-R3-CD, 2009 WL 4825182, at *8 (Tenn. Crim. App. Dec. 15, 2009) (holding that request for counsel was not unequivocal when suspect wrote "I need a lawyer" on the blackboard, among several of other statements, while alone in the interview room, then responded to officer's clarifying questions that he did not want a lawyer); Nash, 2009 WL 2461178, at *4-5 (holding that suspect's question "it ain't possible that I could have a lawyer?" "did not articulate his request for counsel with such clarity that a reasonable police officer would believe his statement to be a request for an attorney"); Osborne, 2007 WL 1890176, at *9 (holding that accused's request for counsel was equivocal when he read the statement on the Miranda waiver form "I do not want a lawyer at this time," immediately said "Yes, I do," then read the remainder of the form aloud and signed the waiver of rights).

Based primarily on this language, most courts considering the pre-waiver/post-waiver distinction have held that the <u>Davis</u> ruling applies only to circumstances in which the accused has already waived his <u>Miranda</u> rights. For example, in <u>State v. Leyva</u>, 951 P.2d 738, 743 (Utah 1997), the Utah Supreme Court ruled that "the Court in *Davis* did not intend its holding to extend to prewaiver scenarios," and described as "entirely separate" the burdens of proof prior to the "waiver of *Miranda* rights and . . . postwaiver invocation of those rights":

> Regarding initial waiver of those rights, the United States Supreme Court has stated that "a heavy burden" rests on law enforcement officers "to demonstrate that the defendant knowingly and intelligently waived" his *Miranda* rights. . . . However, once a suspect has clearly, knowingly, and intelligently waived his *Miranda* rights, *Davis* places the requirement of clarity with respect to postwaiver invocation of those rights on the suspect.

<u>Id.</u> (quoting <u>Miranda</u>, 384 U.S. at 475). Since <u>Leyva</u>, every state appellate court to consider the pre-waiver and post-waiver distinction, with only one exception, has applied its reasoning or similar rationale. <u>See</u> <u>State v. Collins</u>, 937 So. 2d 86, 93 (Ala. Crim. App. 2005) (holding that <u>Davis</u> did not apply where the defendant's questions regarding a lawyer were asked "before she signed the waiver-of-rights form"); <u>Noyakuk v. State</u>, 127 P.3d 856, 869 (Alaska Ct. App. 2006) ("[T]he *Davis* rule (that interrogating officers need not interrupt their questioning to clarify the suspect's wishes) applies only to a post-*Miranda*-waiver setting."); <u>Alvarez v. State</u>, 15 So. 3d 738, 745 (Fla. Dist. Ct. App. 2009) ("[A]n ambiguous waiver must be clarified before initial questioning."); <u>State v. Holloway</u>, 760 A.2d 223, 228 (Me. 2000) (declining to extend <u>Davis</u> "to require an unambiguous *invocation* of . . . the right to an attorney in the absence of a prior waiver); <u>Freeman v. State</u>, 857 A.2d 557, 573 (Md. Ct. Spec. App. 2004) ("[A] careful reading of *Davis* reveals that the Supreme Court's bright line rule, requiring an unequivocal assertion of the right to counsel, pertains to a situation in which the defendant had previously waived his right and then, during the interrogation, arguably sought to exercise his rights."); <u>State v. Tuttle</u>, 650 N.W.2d 20, 28 (S.D. 2002) ("*Davis*, in sum, applies to an equivocal postwaiver invocation of rights."); <u>but see</u> <u>In re Christopher K.</u>, 841 N.E.2d 945, 964-65 (Ill. 2005) (acknowledging that the holding in <u>Davis</u> is limited to an alleged invocation of the right to counsel in the post-waiver context, but choosing to also apply it in the pre-waiver context where the Supreme Court has "left open the issue").

More recently, two federal circuit courts of appeals have adopted the reasoning of these state courts. In <u>United States v. Rodriguez</u>, 518 F.3d 1072, 1078-79 (9th Cir. 2008), the Ninth Circuit held that "the 'clear statement' rule of *Davis* addresses only the scope of invocations of *Miranda* rights in a *post-waiver* context" and does "not address what the

police must obtain, in the *initial waiver* context, to begin questioning."[9] A year later, a Second Circuit panel held that "*Davis* does not instruct courts how to analyze an *initial* invocation of one's Fifth Amendment rights following the *Miranda* warnings where no waiver occurred," but "only provides guidance for circumstances in which a defendant makes a claim that he *subsequently* invoked previously waived Fifth Amendment rights." United States v. Plugh, 576 F.3d 135, 142-43 (2d Cir. 2009). The panel concluded that Davis was "not in play" because the suspect had not signed the form waiving his Miranda rights. Id. at 143. Finally, at least one prominent commentator has agreed with this rationale. See, e.g., Wayne R. LaFave, et al., 2 Criminal Procedure § 6.9(g), n.185 (3d ed. Westlaw 2009) (observing that "[a]lthough the point is sometimes missed," Davis is limited to the post-waiver context).

In our view, the ruling in Davis applies only to post-waiver requests for counsel. As the Supreme Court stated in Smith v. Illinois, the invocation of the right to counsel during the initial encounter with police is separate and distinct from an assertion of that right after a knowing and valid waiver of Miranda rights. While the state bears the burden of proving a valid waiver of the right to counsel prior to a custodial interrogation, the burden shifts after that right has been waived. Where, as here, a suspect makes an equivocal request for counsel prior to waiving Miranda rights, the police are limited to questions intended to clarify the request until the suspect either clearly invokes his right to counsel or waives it.[10] See State v. Blackburn, 766 N.W.2d 177, 182-83 (S.D. 2009) ("[I]n a in a pre-waiver situation where the accused has *not yet validly waived* the *Miranda* rights, the officers must clarify the waiver before proceeding with the interview."); see also Rodriguez, 518 F.3d at 1080 ("Prior to obtaining an unambiguous and unequivocal waiver, a duty rests with the interrogating officer to clarify any ambiguity before beginning general interrogation."); Collins, 937 So. 2d at 93 ("Because [the defendant] did not waive her *Miranda* rights before she asked the questions about obtaining a lawyer, the ambiguity of her questions required the interrogating officer to ask follow-up questions."). After a valid waiver is obtained, however, the suspect bears the burden of showing he is revoking the waiver and clearly insisting upon his right to

---

[9] The Ninth Circuit also observed, as we have, that "the majority of state supreme courts to consider the issue [of whether Davis is limited to the post-waiver scenario] have reached the same conclusion." Id. at 1079 n. 6. In addition, although "a number of decisions have applied the *Davis* rule in a pre-waiver or initial waiver context . . . only one published opinion, from any jurisdiction, [has done] so after expressly considering the initial waiver/post-waiver distinction." Id. (citing In re Christopher K., 841 N.E.2d at 964-65).

[10] Thus, attempts by officers to clarify an ambiguous request for counsel in the pre-waiver context do not, as the Court of Criminal Appeals implied, go "above and beyond what is required by Tennessee law." Turner, 2009 WL 426260, at *8. This statement of the Court of Criminal Appeals is only accurate in the post-waiver context.

counsel prior to further interrogation. If he fails to clearly and unequivocally express his desire to have counsel present, then under <u>Davis</u> the interview may proceed without clarification. To the extent that we failed to make this distinction in <u>Saylor,</u> a pre-waiver scenario not unlike the case before us, we modify the extent of its application.

**Analysis**

In applying these constitutional standards, we must first determine whether the statements that the Defendant made to Smyrna police on February 9, 2007 qualified as an unequivocal invocation of the right to counsel. In this instance, the Defendant's references to counsel were made prior to any waiver of his <u>Miranda</u> rights. Thus, any of his subsequent statements must be suppressed under the <u>Edwards</u> ruling if: (1) the invocation of his right to counsel was clear and unequivocal based upon the objective standard set forth in <u>Davis</u> and our own decision in <u>Saylor</u> or (2) he made an ambiguous request for counsel but the questions the police officers asked prior to the signing of the <u>Miranda</u> waiver form went beyond merely clarifying whether the Defendant intended to invoke his Fifth Amendment right to counsel. The State bears the burden of proof.

Of the several comments pertaining to counsel made by the Defendant after he was informed of his <u>Miranda</u> rights, but before he executed the waiver, perhaps the most assertive appear in the following exchange:

> SPEARMAN: . . . [D]o you want a lawyer present right now? Just yes or no.
> THE DEFENDANT: <u>I could–if I could afford one</u>.
> HODGES: It's not up to whether you afford one or not–
> THE DEFENDANT: Oh, I can get one rather or not?
> HODGES: Yes, sir.
> THE DEFENDANT: And he can come today?
> SPEARMAN: If you got one that you can call.
> THE DEFENDANT: <u>Can I–my phone, my phone is right there in that little envelope–can you go get it for me?</u>
> HODGES: Well, I tell you what–we've got a phone that you can use if you want.
> THE DEFENDANT: <u>I mean, the number's in my cell phone, the lawyer.</u>

(Emphasis added.) This exchange and the circumstances immediately preceding it serve as the basis for our analysis. When considering the question of ambiguity in the assertion of the right to counsel, "an accused's *postrequest* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." <u>Smith,</u> 469 U.S. at 100. Rather, "[w]here nothing about the request for counsel or the circumstances leading up to the request would render it ambiguous, all questioning must cease." <u>Id.</u> at 98.

-14-

The trial court found that the Defendant had unequivocally asserted his right to counsel when he asked the officers to retrieve his cell phone, which apparently contained the cell phone number of a pre-paid legal services provider. The Court of Criminal Appeals held otherwise, concluding that "[v]iewing the interview as a whole, no reasonable officer in this situation would understand [the Defendant]'s statements regarding his cell phone to be an unconditional and unequivocal request for counsel." Turner, 2009 WL 426260, at *8. While this case presents a close issue, we agree with the Court of Criminal Appeals. When taken in context of the conversation between the officers and the Defendant preceding the request for the cell phone, see Smith, 469 U.S. at 100, we believe that it was reasonable for the interrogating officers to further attempt to clarify the nature of his inquiry, rather than terminate the interview. In making this determination, we have viewed the video recording, made observations of the officers' demeanor, and carefully considered the nature and tone of their conversations with the Defendant.

We disagree with the assertion by the Defendant that the custodial interrogation is "indistinguishable" from that in State v. Tidwell, 775 S.W.2d 379 (Tenn. Crim. App. 1989). Tidwell was arrested under suspicion of engaging in unlawful sexual contact. Id. at 383. The transcript of the interrogation established that Tidwell, during the initial stages of the interview, remarked "I'd like to call a lawyer before I discuss that." Id. This was followed by a variety other statements which, even if less certain, indicated Tidwell's desire to have an attorney present. See id. at 384 ("I can't get a lawyer and tell you to[o]?"; "I'm going to tell you, but . . . don't I need some guidance in what I'm going to say[?]"; "Can't I have a lawyer here today and tell you[?]"). Our Court of Criminal Appeals held that the statement "I'd like to call a lawyer before I discuss that" was an unequivocal assertion of Tidwell's right to counsel, which was supported by his subsequent questions to the officers. Id. at 387. It was, therefore, improper for the officers to further comment, to forge ahead with the interrogation, and to "ma[k]e every effort to coax [Tidwell] into making a statement."[11] Id. (quoting remarks by the officers, including "[a] lawyer won't give a tinker's damn about these children").

The case at bar is easily distinguished from Tidwell. The Defendant's request for his cell phone is not a clear assertion of the right to counsel like the statement "I'd like to call

_____

[11] The court went on to state that "[a]ssuming *arguendo* that [Tidwell]'s request in the case *sub judice* was equivocal, the interrogation following the equivocal request should have been strictly limited to a clarification of whether the defendant was in fact invoking his right to have counsel present during interrogation." Id. at 387. This was the standard for all custodial interrogations in Tennessee prior to Davis and Saylor. It remains the standard for interactions between police and the accused prior to waiver of the Miranda rights.

a lawyer before I discuss that." Moreover, the officers continued to aggressively interrogate Tidwell regarding his alleged criminal activities after he made his request for counsel. Detective Hodges and Lieutenant Spearman, by comparison, were courteous to the Defendant and limited their inquiry to clarification of the Defendant's references to an attorney.

The Defendant cites several decisions in which courts have held that statements similar to the ones he made here qualified as unequivocal requests for counsel. We believe that the Defendant's request for his cell phone lacks the clarity of the assertions of the right to counsel in Robinson v. Borg, 918 F.2d 1387, 1389 (9th Cir. 1990) ("I have to get me a good lawyer, man. Can I make a phone call?"), and United States v. Taft, 769 F. Supp. 1295, 1302-03 (D. Vt. 1991) ("[W]hen we get down to the office, can we call–use your phone to call an attorney?"). Furthermore, the Defendant's claim that these cases "appear to be the entire body of caselaw on the issue of requesting a telephone and whether such request constitutes a request for counsel" is simply inaccurate. Numerous courts have found similar statements to be equivocal invocations of the right to counsel. See, e.g., Dormire v. Wilkinson, 249 F.3d 801, 805 (8th Cir. 2001); Ford v. Hall, 546 F.3d 1326, 1339 (11th Cir. 2008); Reed v. State, 227 S.W.3d 111, 116 (Tex. Crim. App. 2006).

In reaching our conclusion, we have also considered a statement that the Defendant made in response to Lieutenant Spearman's inquiry as to whether he wanted a lawyer present. Because the response "I could–if I could afford one" assumes a condition that is not an obstacle to a criminal defendant's entitlement to counsel, this reference more closely approaches an unequivocal request for counsel than the Defendant's request for his cell phone. Ultimately, however, we are persuaded by the fact that when given the opportunity by Lieutenant Spearman to unambiguously assert his right to have an attorney present ("You know, do you want a lawyer present right now? Just yes or no."), the Defendant qualified his response by stating "if I could afford one." The implication that the Defendant might desire counsel if he could afford one was not, in context, a clear invocation of the right to counsel. We believe that our conclusion is in line with a majority of jurisdictions who have considered the effects of similar statements.[12]

---

[12] See, e.g., Lord v. Duckworth, 29 F.3d 1216, 1220-21 (7th Cir. 1994) (holding, in light of Davis, that defendant's statement "I can't afford a lawyer but is there anyway I can get one?" "lacked the clear implication of a present desire to consult with counsel" and "was ambiguous, at best"); Braboy v. State, 745 A.2d 471, 478-79 (Md. Ct. Spec. App. 2000) (determining that defendant's statement, while being read his Miranda rights, that "I want a lawyer but I can't afford a lawyer" was not an unequivocal request for counsel); People v. Granderson, 538 N.W.2d 471, 473 (Mich. Ct. App. 1995) (holding that defendant's response, after being told that the state would provide him an attorney if he wanted one, of "Yeah, I'm–I'm ah need that 'cause I can't afford none," did not reflect a present desire for counsel at all, much less an unequivocal one); State v. Linnik, No. CA2004-06-015, 2006 WL 456792, at *4-5 (Ohio Ct. App. Feb. 27,
(continued...)

-16-

Our opinion today should not be read to adopt an inflexible rule that a request to call an attorney or a statement regarding one's ability to afford counsel can never be deemed an unequivocal request for counsel. Rather, under these particular circumstances, the Smyrna police officers acted reasonably by interpreting the Defendant's remarks to be less than a clear and unambiguous invocation of his right to counsel. Importantly, the police officers, as required, limited their inquiry to attempting to clarify the Defendant's intentions until they obtained a valid waiver.[13]

**Conclusion**

Because the Defendant did not unequivocally invoke his right to counsel under the Fifth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution until he said "[g]et me a lawyer" nearly an hour-and-a-half into the police questioning, the trial court should not have granted the motion to suppress any of the statements made prior to that point. Further, when the Defendant inquired about his right to counsel as he was being informed of his Miranda rights, the Smyrna police officers properly limited the scope of their interrogation to clarifying questions until the Defendant signed the Miranda waiver form. The judgment of the Court of Criminal Appeals is, therefore, affirmed. Costs of this appeal are assessed to the Defendant, Thomas L. Turner, II, for which execution may issue if necessary.

_____

GARY R. WADE, JUSTICE

---

[12](...continued)
2006) (holding that defendant's response "I can't–I can't afford it" when informed appellant that an attorney would be provided for him if he could not afford one did not, without further explanation, "amount to a clear, unambiguous, or unequivocal invocation of the right to counsel"); but see United States v. Alamilla-Hernandez, 654 F. Supp. 2d 1004, 1010 (D. Neb. 2009) ("[T]he defendant made a clear and unambiguous request for a lawyer when he responded, 'I cannot afford an attorney' to the officer's statement that if he could not afford an attorney, one would be appointed for him.").

[13] For example, when the Defendant made the statement "if I could afford one," Detective Hodges immediately explained that "[i]t's not up to whether you [can] afford one or not." Further, when the Defendant asked for his cell phone, the officers asked if he already had an attorney whom he intended to call.